ULPIANO VÉLEZ, ETC., Appellant, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Defendant.

No. CI-64-17.     Decided January 25, 1965.

---

*Donald R. Dexter* and *Miguel A. Guzmán Soto* for appellant.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

After making an elaborate summary of the evidence heard at the hearing of the claim filed by Félix Donato

Burgos, the Industrial Commission made the following findings of fact:

"The evidence presented by claimant deserved our full credit, the same having established that he is a Justice of the Peace of Caguas; that on June 15, 1963, he was required by the duties of his employment imposed by the Court Administration to be available 24 hours a day to render services both for determining probable cause and fixing bail and for issuing warrants of arrest; that on the day of the occurrence, after having spent the morning and afternoon in his office, he received a call from policeman Juan Denis to wait for him in his office for investigation of some cases he was going to submit, to which Judge Donato agreed, and while waiting for policeman Denis he went out to buy some meat for his personal consumption, intending always to return to the office and wait for the policeman.

"The evidence also established that claimant started for the meat market and when he arrived at a garage situated near his office, a car drove in at excessive speed. When the claimant as well as the marshal called this to the attention of the driver, he assumed a violent attitude, as a result of which the Justice of the Peace, in his functions as such, went over to the telephone to call the police and while waiting for the call to go through he was assaulted by the driver of the car, Raúl Cintrón Maldonado. It was established that as a result of this assault claimant received medical treatment for about four months for several injuries received on his body.

"There is no question that the accident sustained by claimant Félix Donato Burgos occurred in the course and as a result of his employment as Justice of the Peace and while performing a function inherent therein. The duties of the Justice of the Peace includes the duty to maintain public peace, make investigations, order arrests and fix bail, and while he was performing one of these functions he was assaulted by an individual who afterwards pleaded guilty and was charged with aggravated assault and battery. It is not significant that the claimant intended to purchase some articles for his personal use, since he always intended to return to his office and had not as yet performed the functions of that day."

The Commission concluded that it was a labor accident and ordered that claimant be accorded the full protection provided by law.

As it may be observed, the elements which the Commission considered as controlling in reaching the conclusion of compensability were: (a) that among the duties of the injured party is the duty to maintain peace, make investigations, order arrests and fix bail; (b) that the fact that the employee had in mind a merely personal errand was immaterial, since he intended nonetheless to return to his office to discharge the functions of his employment; and (c) that on the day of the accident claimant was subject to a working period requiring him to be available 24 hours of the day.

■ Can it be said that in this case the three requirements to make an accident compensable are present, to wit: that the injury be the result of an act or function inherent in the employment, that it occur in the course and as a result of the employment? We believe that, notwithstanding the prism of excessive liberality with which it is sought to analyze the factual situation, and even disregarding certain uncontroverted fundamental facts on which the respondent court made no determinations,[1] a contrary conclusion must be reached.

We note offhand that as a result of the enactment of Act No. 7 of May 7, 1962, which amended § 4 of the Workmen's Accident Compensation Act, 11 L.P.R.A. § 5, the injury caused by the criminal act of a third person was eliminated as an accident excepted from the right to compensation.[2]

---

[1] Among these facts is the aggressor's lack of knowledge of the identity and official post of the injured party who, incidentally, admitted that it was the first time he saw his aggressor.

[2] For cases decided under the eliminated paragraph, see *Manager of State Fund* v. *Industrial Comm'n*, 73 P.R.R. 14 (1952); and *Montaner* v.

■ ■ Schneider, in his well-known work, Workmen's Compensation Text, vol. 6, § 1542, p. 11, points out that "In determining whether an accident arose out of the employment, it is necessary to consider only this: (1) 'Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred.'" Elaborating further, he adds that "if the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." However, if the work does not necessitate the trip, and if the trip would not have gone forward except for the private purpose, any accident occurring in the course thereof could not be attributed to the employment. 7 Schneider, *op. cit.* at 422, § 1690. *Mutatis mutandis*, a trip which may have started out as a personal one may, by the addition of an employment element in the middle, become transformed into a mixed purpose trip, and if the accident occurs after the addition of the employment element, it is compensable. 1 Larson, Workmen's Compensation Law 271, § 19.27.

■ Applying the principles enunciated to the present case, it is clear that the injured party went out of his office on a Saturday afternoon on a merely personal errand, such as to buy some groceries, and that on his way on such errand he was involved in an altercation which gave rise to the assault.[3] He was not, indeed, making an investigation,

---

*Industrial Commission*, 50 P.R.R. 601 (1936).

On the retroactivity of the provisions of Act No. 7, *supra*, to accidents pending on January 24, 1961, see *Gallart v. Industrial Commission*, Review 601, judgment of December 3, 1962.

[3] Claimant himself made the following recital:

". . . as we approached the service station a car drove in; as it drove in, it travelled at excessive speed, and since the place is wide there, it left the road and entered the filling station. The car kept moving toward

nor performing functions of his employment such as issuing warrants of arrest and determining probable cause, as alleged by the Commission. That is why perhaps it is sought to interpolate the element of his duty "to maintain public order" which could point to an official function. This is made to depend on that "they decided to call the police" and went to the service station, and while the marshal was putting in the call Judge Donato, who was standing at the door of the establishment, was "victim of the aggression." To call the police under circumstances such as those of the present case for the purpose of making an investigation in order to exact criminal liability for some facts in which the injured is one of the parties involved, was not a function of his employment;[4] rather, it was the action of any citizen in his

Juan García, the marshal. When I saw that, I pulled the marshal; if I had not pulled him, it would have injured him. I asked the marshal, 'is that man a friend of yours?,' and he said 'I don't know, let me see'; then he went over there, and upon realizing that he did not know him, he called his attention. He said, 'you almost ran over me,' and the man said 'and so what.' When I saw that, I was nearby, about five or six feet from them, I stepped over and said to the man, 'can you run over people like that?' Then he said, 'well, I'll run over both of you.' The marshal then said to me, 'Let us call the police to investigate this.' We decided to go to the service station to call the police. In the meantime he started the car and drove away. We went to the station, to the office; the marshal and myself and the owner of the garage, Rafael Aponte, were there; I was standing at the entrance of the office, but inside.

Q. What did you go there for?

A. To call the police, to report the incident. While we were there, that we were going to dial the police telephone number, Juan García and the owner of the garage were seated at the telephone, I was standing at the door, just then I felt a blow and my teeth fell in my hands."

In the petition for appeal the accident was described as follows: "as he [referring to claimant] tried to call the police a driver with whom he was engaged *in an argument* assaulted him."

[4] Section 22 of the Judiciary Act, 4 L.P.R.A. § 202, provides that the Justices of the Peace "shall exercise all functions and powers of judicial authority exercised by the Justices of the Peace at the time this Act takes effect, including the function and power to fix and accept bails and to issue warrants for arrest and for search and seizure . . . except that they may not adjudicate cases cognizable by the District or Superior Courts."

670

private capacity reporting the commission of a criminal act. It was not a risk to which the injured was exposed as judge, but rather a risk common to all citizens. *Cf. Gallart, Mgr.* v. *Industrial Commission*, 89 P.R.R. 570 (1963).

■ Lastly, the fact that Judge Donato, by administrative disposition of the Administrative Director of Courts, was to be on call time 24 hours of the day to perform certain functions of his office does not mean that any accident— no matter its source—can be attributed to his employment. It is necessary that there be some causal connection, even though incidental, with the employment, arising out of the discharge of the duties of the office. *Cf. Bush* v. *Houston Fire & Casualty Ins. Co.*, 152 So.2d 377 (La. 1963); *Sloss-Sheffield Steel & Iron Co.* v. *Harris*, 117 So. 755 (Ala. 1928). This also disposes of the importance attributed to the fact that Judge Donato intended to return to his office to attend to some matters to be submitted for his consideration.

The order of the Industrial Commission of May 28, 1964, will be set aside.

Mr. Chief Justice Negrón Fernández dissented.

—O—

MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ, dissenting.

I dissent because I consider that the determination of the Industrial Commission declaring compensable the case of Justice of the Peace Félix Donato Burgos was correct.

The test for compensating or not in this case is not whether the Justice of the Peace abandoned his office in order to pursue a merely personal errand and that he was not conducting an investigation, nor whether the aggressor knew that the injured party was a Justice of the Peace. In my

*People* v. *Superior Court*, 80 P.R.R. 488 (1958). The former Act—No. 432 of May 15, 1950—provided that the Justice of the Peace could fix and accept bails and may act as committing magistrate in all cases of felony.

opinion, the determinative test of the compensable nature of the case is, that the Justice of the Peace, as a judicial officer —regardless of whether he had gone out of his office on a merely personal errand—was performing a lawful function connected with the duties of his office, such as calling the police by telephone to denounce a fact in violation of the law which he had just observed, which exposed him to aggression—as he was at that moment by the violator.

It matters not whether any other person could have received the aggression, even if he was not the Justice of the Peace, or that the call to the police would have been ordered by any other person, even if he was not the Justice of the Peace either. The question is whether the employment, or the conditions of the employment, bring the employee in contact with the risk that caused the injury. 2 NACCA L. J. 18, 20–21 *et seq.*; 13 NACCA L. J. 52 *et seq.*

Among the powers which Rule 14 of the Rules of Criminal Procedure confers upon the *magistrates*, among whom is the Justice of the Peace (Rule 3), is the power to order any public peace officer to arrest a person. It matters not whether the public peace officer was not present to receive an order at once from the Justice of the Peace to intervene with the violator of the law. The purpose of the telephone call was the same and comes within the sphere of the incidental powers of the Justice of the Peace. 3 NACCA L. J. 46, notes 85, 86. By reason of his office of magistrate, he was bound not to elude his responsibility to notify the police of the violation of the law observed by him.

Under the circumstances noted, the conclusion reached by the majority is in my opinion erroneous.